**Yu ZHANG, et al., Plaintiffs,**

v.

**GC SERVICES, LP, Defendant.**

**Civil No. 3:07CV94.**

United States District Court, E.D. Virginia, Richmond Division.

Jan. 7, 2008.

Matthew James Erausquin, Leonard Anthony Bennett, Consumer Litigation Assoc. PC, Newport News, VA, Jason Meyer Krumbein, Krumbein Consumer Legal Services, Richmond, VA, for Plaintiffs.

Rebecca H. Royals, James Curie Skilling, Butler Williams & Skilling PC, Richmond, VA, for Defendant.

## *MEMORANDUM OPINION*

DENNIS W. DOHNAL, United States Magistrate Judge.

This matter is before the Court on Plaintiffs' motion for attorney's fees and costs (docket entry no. 15), pursuant to the acceptance by Plaintiffs of Defendant's Offer of Judgment that included all "reasonable" attorney's fees and costs. All relevant issues have been fully briefed, and the Court concludes that oral argument would not be of additional assistance in the decisional process. Accordingly, the matter is ready for resolution.

### I. Background

Plaintiffs Yu Zhang and Xiaoyuan Yu ("Plaintiffs") filed a complaint against Defendant, GC Services, LP, pursuant to the Fair Debt Collection Practices Act ("FDCPA") and a state collection statute. The parties consented to the jurisdiction of this Court and the merits of the case were resolved by Plaintiff's acceptance of the Defendant's Offer of Judgment relatively soon thereafter. The Offer provided, in pertinent part, for judgment to be taken against Defendant in the amount of $ 1,000.00 per plaintiff, which is the statutory "cap" for each violation of the FDCPA, plus all *reasonable* attorney's fees and costs. (Def.'s Mem. Supp. Mot. for Protective Order at 1.)

Defendant rejected Plaintiffs' initial informal demand of thirty thousand dollars ($30,000) for fees and costs. The Court thereupon conducted a conference call with all counsel in which it directed Plaintiffs' counsel to produce Plaintiffs' attorneys' fee records for *in camera* review. After the Court reviewed the records and determined that there was no privileged materi-

al involved, it instructed Plaintiffs' counsel to provide them to defense counsel so that the defense could assess the reasonableness of the requested fees. At that juncture, Plaintiffs' counsel reduced the demand for fees to Twenty Four Thousand Eight Hundred Seventy Seven and 50/100 ($24,877.50) Dollars.

Defendant continued to assert that the amount was unreasonable and, therefore, the Court advised counsel that if the parties were unable to agree on an amount, Plaintiffs' counsel could file a fee petition, to which Defendant could respond. Accordingly, Plaintiffs' counsel filed the motion and Defendant noted its opposition in response.

On November 16, 2007, the Court issued an Order for reasons to be set forth in this Memorandum Opinion, granting Plaintiffs' motion for an extension of time to file a reply brief; denying Plaintiffs' motion to compel (docket entry no. 20), Defendant's motion to quash (docket entry no. 22), and Defendant's motion for a protective order (docket entry no. 25); and cancelling the motions hearing that had been scheduled.

## II. Previously Outstanding Motions

### A. Plaintiffs' Motion to Compel

**Plaintiffs' Position:**

Plaintiffs argue in support of their motion that there is precedent for their request for Defendant counsel's time records where Defendant objects to the fee petition on the basis of the alleged unreasonableness of the effort expended. (Pls.' Mot. to Compel at 3–4.) Specifically, Plaintiffs refer the Court to *Stastny v. S. Bell Tel. & Tel. Co.*, 77 F.R.D. 662 (W.D.N.C.1978), and assert that the case holds that the time opposing counsel spends on a case is relevant to the reasonableness of the time expended by petitioning counsel. Plaintiffs also note an Eleventh Circuit case. *Henson v. Columbus Bank & Trust Co.*, 770 F.2d 1566, 1575

(11th Cir.1985), and a Sixth Circuit case, *Black v. Lojac Enters., Inc.*, 117 F.3d 1420 (6th Cir.1997) (per curiam), for the same proposition. Accordingly, Plaintiffs moved the Court to compel defense counsel to comply with their subpoena requesting all billing records, time sheets, invoices, or other documents which reflect the effort performed by the law firm in defense of the matter. (Pls.' Mot. to Compel at 6.)

**Defendant's Opposition:**

Defendant contends that Plaintiffs fail to justify the relevance of defense counsel fee records in determining the reasonableness of Plaintiffs' counsel fees. (Def.'s Mem. In Opp'n to Pls.' Mot. to Compel at 3.) Defendant claims that "defending this claim and prosecuting it were two entirely different propositions, and an 'apples-to-oranges' comparison of the fees generated at such an early stage in this litigation provides no conceivable insight to the Court in its determination of the reasonableness of the fees reflected in Plaintiffs' fee records." *Id.* Defendant emphasizes that Plaintiffs bear the burden of proving reasonableness since they are the party seeking the payment of the fees. *Id.* The defense further contends that no precedent exists mandating a review of the billing records of opposing counsel, and that the Fourth Circuit has previously compiled a list of the factors to be considered in determining the reasonableness of fees under a lodestar calculus which does *not* include an analysis of the legal fees of the opposing party. (*Id.* at 4.)

**Analysis:**

■ While Plaintiffs are correct in their assertion that some courts have found it useful to compare opposing counsel's efforts and resulting hours and fees with the fee petitioner's demands in order to determine the reasonableness of the requested attorneys' fees, the authority relied on by Plaintiffs do not stand for the proposition

that the Court *must* undertake such a comparison. In fact, the same authority also cautions against the hazards of such a comparison and notes that only occasionally do courts endeavor to compare the opposing counsel's fee records. For example, the Court of Appeals for the Eleventh Circuit, in *Henson,* stated that:

> We have on occasion questioned whether the number of hours spent on a case by defense counsel is relevant to a determination of the reasonable fees for plaintiffs' attorneys. Our reasoning has been that the number of hours needed by one side to prepare adequately may differ substantially from that of opposing counsel because the nature of the work on each side may differ dramatically.... We have acknowledged, however, that *in some cases* it would be proper to allow the discovery of and use of such evidence.

*Henson,* 770 F.2d at 1574 (internal citations omitted) (emphasis added). It is clear from a review of all relevant authority that the decision of whether a comparison of opposing counsel's time records and resulting fees would aid in the determination of the reasonableness of requested attorneys' fees is solely within the court's discretion.

■ Here, Plaintiffs fail to provide any compelling explanation of the relevance of defense counsel's time sheets. Plaintiffs merely assert that the time-sheets "are certainly probative to the inherently subjective determination [Defendant] asks the Court to make on its objections as to reasonableness and excessiveness." (Pls.' Mot. to Compel at 5.) Plaintiffs also contend that the time records "will serve as a baseline for determining whether Plaintiff's claim for fees is reasonable given that a plaintiff with the burden of proof has the laboring oar and more difficult task in working up the case and extracting evidence from the Defendant, and the Plain-

tiff is entitled to rely on [the time records] in composing her reply brief to Defendant's objections." *Id.* Not only have Plaintiffs failed to establish the relevance of Defendant's time sheets, it appears that Plaintiffs are attempting to shift the burden to the Defendant of proving the reasonableness of their own fees by having defense counsel produce their time sheets and defend the reasonableness of their efforts. Such production would be of marginal assistance to the Court, at best, while placing an undue burden on the defense.

Additionally, postjudgment discovery as to fee issues is rare. Not only has the Offer of Judgment already been accepted, the time period for normal, pre-trial discovery, as set forth in the Court's Scheduling Order, has also expired. Therefore, if Plaintiffs were to conduct additional discovery on their fee motion, it would be necessary for them to first petition the Court to reopen discovery so that the Court could properly monitor the situation. Plaintiffs have not done so.

For all of these reasons, the Court denied the Motion to Compel.

## B. Plaintiffs' Motion for An Extension of Time

Plaintiffs also moved the Court for an extension of time to submit their reply to Defendant's opposition to Plaintiffs' motion for attorneys' fees in order for them to have an opportunity to complete an analysis of Defendant's fee records. The Court granted the motion for extension, even though it also denied the motion to compel, so as to give Plaintiffs the opportunity to submit any supplemental response as they may have deemed to be appropriate, absent the production of defense counsel's fee records. However, Plaintiffs' counsel thereafter notified the Court that Plaintiffs waived their right to submit any reply

brief in support of their motion for fees and costs.

## C. Defendant's Motion to Quash

Defendant moved to quash Plaintiffs' subpoena, claiming that it was overly broad and sought materials that are protected by the attorney-client privilege and the work-product doctrine. (Def.'s Mem. In Supp. Of Its Mot. To Quash Subpoena at 1–2.) Plaintiffs responded that Defendant had failed to comply with the requirements of Fed.R.Civ.P. 45 to sustain its burden of objection; specifically, that defense counsel had failed to produce a privilege log or affidavit evidence as to the alleged undue burden imposed by compliance with the subpoena. (Pls.'s Mem. In Opp'n to Def.'s Mot. To Quash Subpoena at 3–4.) Plaintiffs also contended that Defendant did not have standing to move to quash the subpoena because Rule 45(c) applies to only those persons to whom or which a subpoena has been issued, subject to a narrow exception for matters of privilege. (Id. at 3.) Plaintiffs further argued that Defendant's motion to quash was untimely by one day and should therefore be denied, with sanctions to be imposed. (Id. at 5.)

Defendant asserted in response that its motion to quash complied with Rule 45 where the Rule applies to both those to whom a subpoena has been issued and, in the case of any asserted privilege, those who hold the right or privilege relevant to the subject matter of the subpoena. (Def.'s Reply to Pls.'s Mem. In Opp'n to Def.'s Mot. To Quash Subpoena at 2–3.)

Defendant therefore contended that it had standing to file the motion to quash on the basis of the privileges it had asserted. (Id.) Defendant further argued that its claim of privilege was not waived due to its failure to file a "privilege log," because Rule 45 only requires that the materials not produced be described in such a way that enables the demanding party to contest the claim, and that the Defendant had done so. (Id. at 3–4.) Finally, Defendant asserted that its motion to quash was timely filed because the subpoena stated that the documents demanded were to be returned by a certain date, and Defendant served its motion on Plaintiffs' counsel prior to that time. (Id. at 4–6.) Defendant also reiterated its argument that Plaintiffs were not entitled to post-judgment discovery in any event. (Id. at 7–9.)

It is not necessary for the Court to address the various issues raised in the motion because the motion to quash was rendered moot when the Court denied the motion to compel. The motion to quash was accordingly denied.

## D. Defendant's Motion for Protective Order

Plaintiffs also served on Defendant a Notice of Deposition pursuant to Fed. R.Civ.P. 30(b)(6),[1] which sought to take the video deposition of a Defendant representative concerning the following topics:

1. The content of any time sheets, invoices, or fee records submitted to the Defendant or any of its insur-

---

1. Fed.R.Civ.P. 30(b)(6) states: "[A] party may name as the deponent a public or private corporation, a partnership, an association, a governmental agency or other entity and must describe with reasonable particularity the matters for examination. The named organization must then designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify. A subpoena must advise a nonparty organization of its duty to make the designation. The persons designated must testify about information known or reasonably available to the organization. This paragraph (6) does not preclude a deposition by any other procedure allowed by these rules."

ance carriers by any attorney or law firm in conjunction with this matter;

2. The name, case number, and name of the court which presided over any case brought pursuant to the Fair Debt Collection Practices Act in which the Defendant made an offer of judgment;

3. The content of any time sheets, invoices or fee records submitted to the Defendant or any of its insurance carriers by an attorney that represented a Plaintiff in any of the cases identified in Topic # 2;

4. The amount of money paid by the Defendant to Plaintiff[s] or Plaintiff's counsel in any of the cases identified in Topic # 2;

5. All reasons why the Defendant contends that the amounts referenced in Topic # 4 were reasonable; and,

6. All reasons why the Defendant contends that the amount of money sought by the Plaintiffs in their Motion for an Award of Attorney's Fees and Costs is inflated, unreasonable, or excessive.

(Def.'s Mem. in Supp. of Mot. for Protective Order at 4.) In response, Defendant requested that the Court enter a protective order preventing the deposition of Defendant's 30(b)(6) designee and further ordering that no post-judgment discovery be conducted.

In support of its request for a protective order, Defendant again argued that Plaintiffs' attempts to conduct post-judgment discovery were untimely and improper, and that only under limited circumstances not present here (and by order of the court) is post-judgment discovery to be permitted. Defendant otherwise contended that "[t]he topics on which discovery is sought pursuant to Plaintiffs' 30(b)(6) notice are irrelevant, immaterial, overbroad, unduly burdensome, and/or are protected by the attorney-client privilege and/or the

work product doctrine." (Def.'s Mem. in Supp. of Mot. for Protective Order at 6.).

Concluding that the Rule 30(b)(6) deposition requested by Plaintiffs was for the purpose of obtaining essentially the same information as also demanded in the subpoena, the Court denied Defendant's Motion for a Protective Order as moot because the Court had denied Plaintiffs' Motion to Compel.

Having ruled on the parties' preliminary motions, the Court now resolves Plaintiffs' substantive motion for attorneys' fees and costs (docket entry no. 15.)

### III. Plaintiffs' Motion for Attorneys' Fees and Costs

**Summary of Motion:**

The parties have agreed that Plaintiffs' counsel are entitled to "reasonable" fees and costs, and it is therefore not necessary to initially determine whether counsel is entitled to any amount by statute or otherwise; rather, the issue is what constitutes "reasonable" fees in the case.

Plaintiffs' counsel contend that their total fees amounted to nearly thirty thousand dollars ($30,000) at the time the Offer of Judgment was accepted and that by exercising billing discretion, Plaintiffs were seeking the reduced amount of approximately twenty five thousand dollars ($25,000). Plaintiffs' counsel further represent that just prior to filing their motion for attorneys' fees, they offered to accept twenty thousand dollars ($20,000) to finally resolve the matter. The defense countered with the figure of fourteen thousand dollars ($14,000) that was rejected, and the present impasse developed.

Accordingly, Plaintiffs have filed their motion in which they seek an award of attorneys' fees in the amount of twenty six thousand five hundred twenty dollars ($26,520.00) and additional costs in the amount of four hundred sixty · seven and

60/100 ($467.60) dollars for a total of twenty six thousand nine hundred eighty seven and 60/100 ($26,987.60) dollars. Defendant asserts that such an amount for fees is not "reasonable," but the amount for costs is not contested.

**Analysis:**

 "The most useful starting point for determining the amount of a reasonable fee is the number of hours expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). It has been held that the following factors should be considered in deciding what constitutes a reasonable rate:

(1) the time and labor expended;

(2) the novelty and difficulty of the questions raised;

(3) the skill required to properly perform the legal services rendered;

(4) the attorneys' opportunity costs in pressing the instant litigation;

(5) the customary fee for like work;

(6) the attorneys' expectations at the outset of litigation;

(7) the time limitations imposed by the client or circumstances;

(8) the amount in controversy and the results obtained;

(9) the experience, reputation, and ability of the attorney;

(10) the undesirability of the case within the legal community in which the suit arose;

(11) the nature and length of the professional relationship between attorney and client; and,

(12) attorneys' fees awards in similar cases.

*Brodziak v. Runyon,* 145 F.3d 194, 196 (4th Cir.1998) (citations omitted); *Johnson v. Ga. Highway Express, Inc.,* 488 F.2d 714, 717–19 (5th Cir.1974). However, a court is not required to address what por-

tion of the award is attributable to each factor. In fact, as the United States Supreme Court noted in *Hensley,* many of the relevant factors "are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate" and need not, therefore, be specifically considered. 461 U.S. at 434 n. 9, 103 S.Ct. 1933 (citations omitted). Accordingly, it is not necessary for this Court to address each of the *Johnson* factors, and the Court will therefore focus on those factors that the Court deems relevant to the determination of a reasonable amount of attorneys' fees to be awarded on the basis of the circumstances of this particular case.

**1. Time and Labor Expended**

 As the Supreme Court notes in *Hensley,* the starting point in establishing the proper amount of an award is the number of hours reasonably expended, multiplied by a reasonable hourly rate. 461 U.S. at 433, 103 S.Ct. 1933. The parties dispute the "reasonableness" of the hours expended in the prosecution of this case, not the assigned hourly rates. To determine a reasonable number of hours, a court may subtract "hours which were duplicative, unproductive, excessive, or otherwise unnecessary." *United States v. Metro. Dist. Comm'n,* 847 F.2d 12, 16 (1st Cir.1988).

**a. "Duplicative" Fees**

Defendant contends that some of Plaintiffs' claimed fees are duplicative/redundant. Specifically, Defendant takes issue with what it deems "duplicative time expenditures" such as where Plaintiffs' attorneys (Matthew Erausquin, Esquire and Leonard Bennett, Esquire) assess separate fees for what appears to be duplicative effort by each attorney. (Def.'s Mem. in Opp'n to Pls.' Mot. for an Award of Atty's Fees and Costs Against Def. GC Servs., Inc. "Def.'s Mem." at 5–6.) Specifically,

Defendant claims that the following time expenditures are duplicative:

- [O]n February 13, both Messrs. Bennet and Erasquin charged their clients for 0.5 hours (for a total of 1.0 hours) spent in an unspecified telephone consultation with each other;
- [O]n May 11, Mr. Bennett and Mr. Erausquin each billed 0.4 hours (a total of 0.8 hours) for a conference with each other regarding "settlement;"
- [O]n May 28, they each billed 0.4 hours (with Mr. Bennett's 0.4 hours subsumed into a larger block of 1.5 hours) for a mutual conference regarding "discovery;"
- [O]n July 3, each charged for 0.5 hours (again, a total of 1.0 hours) for another discussion with each other regarding Defendant's "discovery position;"
- [O]n July 14, they again double-billed at 0.3 hours apiece for a mutual conversation regarding a potential "37 sanctions m[otion];"
- [O]n July 14, both Mr. Erausquin and Ms. Freeman each billed their clients 0.8 hours for an office meeting, for a total of 1.6 hours; and,
- [O]n May 22 and 23, Messrs. Erausquin and Bennett spent 1.2 and 1.0 hours, respectively, reviewing Defendant's initial disclosures, which consisted of exactly two pages. . . .

(Def.'s Mem. at 5–6.)

▮ Although the Court acknowledges and agrees with the premise that co-counsel and staff must communicate with each other to insure effective representation, billing at a full rate for each attorney or staff member for such essentially duplicative or instructional effort requires adjustment. The case was a relatively simple, straight-forward case, free of any complex or novel issues. The main attorney has been Mr. Erausquin, an experienced attorney who has previously dealt with similar consumer cases in this and other courts. Accordingly, while Mr. Bennett's and Ms. Freeman's efforts were presumably of assistance, or necessitated to some degree by staffing issues, they appear to be more of a duplicative or cumulative nature in several instances so as to require some adjustment. The asserted duplicative efforts of Mr. Bennett and Ms. Freeman will therefore be discounted by two-thirds, based on a discretionary "rationing" by the Court that affords some credit for the input, including the following additional entries that the Court has identified:

- On April 23 and 24, Mr. Erausquin and Mr. Bennett each billed for their separate reviews of the Court's Scheduling Order; 0.5 hours for Mr. Erausquin and 0.3 hours for Mr. Bennett;
- On June 18 and 19, Mr. Erausquin and Mr. Bennett both billed for their respective reviews of Defendant's Objections to Interrogatories and Requests for Production; 1.2 hours for Mr. Erausquin and 0.8 hours for Mr. Bennett;
- On June 21, both Mr. Erausquin and Mr. Bennett billed for a telephone conference they had with one another regarding objections to interrogatories and requests for productions, at 0.5 hours each;
- On June 22, Mr. Erausquin and Mr. Bennett both billed for a telephone conference they had with one another regarding motion to overrule objections, at 0.4 hours each;
- On July 2 and 3, Mr. Erausquin and Mr. Bennett both billed for their respective reviews of a letter from opposing counsel regarding the objections; 1.5 hours for Mr. Erausquin and 0.5 hours for Mr. Bennett; and,
- On July 11, 2007, Mr. Erausquin and Ms. Freeman each billed for their respective reviews of third-party contact

Complaints; 4.2 hours for Ms. Freeman and 6.2 hours for Mr. Erausquin.

### b. "Excessive" Fees

■ Defendant argues that several of Plaintiffs' time-sheet entries constitute "excessive" fees, and therefore should be reduced or eliminated from the Court's calculation of "reasonable" attorneys' fees. For example, on June 21, 2007, Mr. Erausquin indicates that he spent 2.7 hours drafting a letter to opposing counsel regarding the latter's "unfounded" objections to interrogatories and requests for production. (Pls.' Time–Sheet at 2.) 2.7 hours does seem to be an excessive amount of time to spend drafting a three-page letter, especially considering that Mr. Erausquin had already expended 1.2 hours to review the objections, and that he had participated in a half hour conference call with Mr. Bennett regarding the same objections. The Court deems that such a task could have been completed in 1.5 hours, resulting in a reduction of 1.2 hours.

In addition, on July 2, 2007, Mr. Erausquin appears to have spent 1.5 hours reviewing a letter from opposing counsel regarding counsel's position on the objections that had been lodged (Pls.' Time–Sheet at 3.) On the next day, Mr. Bennett reviewed the same letter; however, he only spent a half hour to do so. (Pls.' Time–Sheet at 3.) Although the time Mr. Bennett spent reviewing the letter has already been disposed of as being duplicative, it is a useful guide for the Court's determination of the "reasonableness" of the effort spent by Mr. Erausquin reviewing the same document. The Court deems that 1.5 hours is an excessive amount of time and that 0.5 hours to perform the task is more appropriate. Accordingly, 1.0 hour will be deducted from that entry on Plaintiffs' counsel's time-sheet.

### i. Fees That Will Receive the Paralegal Rate

■ "It is appropriate to distinguish between legal work, in the strict sense, and investigation, clerical work, compilation of facts and statistics and other work which can often be accomplished by non-lawyers but which a lawyer may do.... Such non-legal work may command a lesser rate. Its dollar value is not enhanced just because a lawyer does it." *Johnson,* 488 F.2d at 717; *see also Morse v. Republican Party of Va.,* 972 F.Supp. 355, 366 (W.D.Va.1997) ("attorneys cannot expect to be compensated at attorney rates for the performance of clerical tasks.") Because the following tasks appear to have been such that a paralegal could have completed them, the Court will apply the paralegal rate of $105.00 per hour to the following time-sheet entries attributed to counsel:

- July 2, 2007: "PACER Research; pull and print 88 Complaints filed against GC for prev 2 years;"
- July 3, 2007: "Compile list of active GC cases;" and,
- July 11, 2007: "Review third-party contact Complaints; create witness list."

(Pls.' Time–Sheet at 3.)

### ii. Fees Where Plaintiffs Failed to Meet Their Burden of Proving The "Reasonableness"

■ As previously noted, "[t]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley,* 461 U.S. at 437, 103 S.Ct. 1933. The fee applicant "should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims." *Id.* A number of Plaintiffs' time-sheet entries do not adequately describe the work performed for the effort involved:

- February 13, 2007: "finish timeline"—Plaintiffs' counsel fails to explain why this was necessary, especially considering that the previous day counsel appeared to have completed the timeline when he billed 0.7 hours for the purpose of creating a timeline and confirming it with his client via telephone;

- May 28, 2007: Mr. Erausquin claims 0.5 hours for a "TC with Pete Barry re: co-pending cases"—Plaintiffs' counsel do not explain how this telephone conference is relevant to the case before the Court;

- June 21, 2007: Mr. Erausquin claims 2.2 hours to perform "Legal research re: boilerplate objections, shepardize cases from Schneider"—Plaintiffs' counsel do not explain what this entry means, nor its relevance to the case;

- June 25, 2007: Mr. Erausquin states that he spent 0.5 hours to "Review Duff Protective Order"; The Court agrees with Defendant that this entry appears to be related to a different case altogether. In any event, Plaintiffs' counsel fail to demonstrate how it is relevant to this case; and,

- July 13, 2007: Mr. Erausquin asserts he spent 0.4 hours engaged in a "TC with Pete Barry re: codes." Again, Plaintiffs' counsel do not explain how this telephone conference is relevant to the case before the Court.

(Pls.' Time–Sheet.) Accordingly, the Court has no basis on which to identify whether such time entries are "reasonable," and they will not, therefore, be included in the Court's final calculation of appropriate fees.

### iii. Fees for Clerical Work

■ Defendants contend that Ms. Freeman, a paralegal, "billed approximately 2.9 hours (at $105.00 per hour) between February 17 and April 5 for such clerical tasks as 'prepar[ing] civil cover sheet; cut[ting] check for filing fee; fil[ing] Complaint; ... [l]ocat[ing] process server; prepar[ing] service copes of Complaint; ... and [f]iling Return of Service with Court.'" (Def.'s Mem. at 6.) The court, in *Meade v. Barnhart*, stated that "purely clerical tasks are ordinarily a part of a law office's overhead and should not be compensated." 218 F.Supp.2d 811, 813 n. 4 (W.D.Va.2002) (citing *Keith v. Volpe*, 644 F.Supp. 1312, 1316 (C.D.Cal.1986)): *see also, Missouri v. Jenkins*, 491 U.S. 274, 288 n. 10, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989) ("purely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them"). This Court concurs and, accordingly, the following tasks performed by Ms. Freeman will not be included in the Court's calculation of reasonable fees:

- February 17, 2007: Ms. Freeman spent 1.5 hours to "Proofread Complaint; prepare civil cover sheet; cut check for filing fee; file Complaint;"

- March 12, 2007: Ms. Freeman spent 1.2 hours to "Locate process server; prepare service copies of Complaint;"

- April 5, 2007: Ms. Freeman spent 0.2 hours to "File Return of Service with Court;"

(Pls.' Time–Sheet at 1.)

### v. Remaining "Reasonable" Hours

In Plaintiffs' motion, counsel indicated that they would also seek a supplemental award of attorneys' fees for the time expended litigating the issue of attorneys' fees and related matters. (Pls.' Mot. for Att'ys Fees and Costs at section "C".) Plaintiffs have not done so, but even if Plaintiffs' counsel had moved the Court for

such a supplemental award of attorneys' fees, such award appears to be precluded by the Offer of Judgment. Indeed, the first paragraph of the Offer of Judgment, which was agreed to and signed by both parties and filed with the Court, states, in pertinent part, that Plaintiffs will be awarded "all reasonable attorney's fees and costs accrued by each plaintiff *to date*." (Def.'s Offer of J. at 1) (emphasis added). Accordingly, Plaintiffs' counsel would have been precluded from receiving compensation for attorneys' fees accrued anytime after the acceptance of the Offer of Judgment, including those accrued during the litigation of the dispute concerning attorneys' fees. Presumably, that is why no supplemental petition was submitted.

The remaining hours included on Plaintiffs' counsel's time-sheets, as adjusted by the reductions of the Court, constitute the hours deemed "reasonable" by the Court for purposes of calculating the appropriate amount of attorneys' fees as contemplated by the parties' agreed Offer of Judgment.

## vi. Reasonable Hourly Rate

Plaintiffs' counsel assert an hourly rate of $350.00 for Mr. Bennett; $275.00 for Mr. Erausquin; and, $105.00 for Ms. Freeman. Defendant does not dispute these hourly rates and the Court otherwise finds such hourly rates to be reasonable and appropriate, the Court being familiar with comparable market rates and the level of expertise demonstrated by each counsel in numerous appearance before the Court. Accordingly, the Court will apply the listed rates in its calculation of attorneys' fees.

## IV. THE COURT'S CALCULATION OF REASONABLE ATTORNEYS' FEES

The Court has, within its designated discretion, reduced the number of hours expended by Mr. Erausquin, Mr. Bennett, and Ms. Freeman, as noted, and has further adjusted the rate to a paralegal rate for 15.9 of a portion of the hours expended by Mr. Erausquin, for the previously-stated reasons. Accordingly, the total hours and applicable hourly rate are as follows:

| | |
|---|---|
| Mr. Erausquin: | 46.9 hours at $275.00/hour = $12,897.50<br>15.9 hours at $105.00/hour = $ 1,669.50<br>Total = $14,567.00 |
| Mr. Bennett: | 6.0 hours at $350.00/hour = $2,100.00<br>5.6 hours at rate discounted by 2/3 = $653.33<br>Total = $2,753.33 |
| Ms. Freeman: | 8.6 hours at $105.00/hour = $903.00<br>5/0 hours at rate discounted by 2/3 = $175.00<br>Total = $1,078.00 |

The Court therefore finds that the total amount of attorneys' fees that is reasonable in this case is Eighteen Thousand Three Hundred Ninety Eight and 33/100 ($18,398.33) Dollars. In addition, the amount of costs claimed for filing fees, printing, postage, and delivery, totaling Four Hundred Sixty Seven and 60/100 ($467.60) Dollars, which is not contested, will also be awarded.

An appropriate Order shall issue.